**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA
    Plaintiff

vs.

AGRIPINO CASTILLO-APOLINAR
    Defendant

CRIMINAL NO.: 25-483 (MAJ)

**SENTENCING MEMORANDUM**

TO THE HONORABLE COURT:

## I. Introduction

Agripino Castillo-Apolinar ("Mr. Castillo"), the Defendant, respectfully submits this memorandum in support of his position at sentencing. Mr. Castillo was arrested at a job site in Dorado, PR, after authorities received an anonymous complaint about the presence of undocumented workers. Mr. Castillo believes that the contractor who hired him is the one who made the complaint because he owed wages to his workers. In any event, Mr. Castillo accepts his responsibility, and in fact, was cooperative with the federal agents. He did not resist his arrest, nor did he attempt to conceal his identity. He provided authorities with his real identity and identification card and was truthful. Further, a federal magistrate judge granted conditions of release at the initial hearing on November 6, 2025, after finding that Mr. Castillo was not a danger to the community nor a flight risk. Since then, Mr. Castillo has fully complied with his conditions of release. PSR ¶13. With a criminal history category of I, the applicable guideline range is from 0

to 6 months of imprisonment. PSR ¶56. Importantly, as stated in the PSR, "a sentence other than a sentence of imprisonment, in accordance with USSG §5C1.1(b) or (C)(3) is generally appropriate." PSR ¶57. Accordingly, Mr. Castillo is requesting that the Court impose a sentence of TIME SERVED.

## II. Who is Agripino Castillo Apolinar?

In 1966, the Dominican Republic was experiencing political unrest and social upheaval. A civil war broke out the previous year after a right-wing military coup overthrew the democratically elected and left-leaning president. The people revolted against the military junta which precipitated the United States' military intervention and occupation of the country. Amid all of this turbulence, Mr. Castillo was born in April of that year in the Cibao region of the country, which is north of Santo Domingo.

A few months after his birth, a new president was elected and the Americans left. History says that the country improved afterwards, but life remained the same for Mr. Castillo and his family. Mr. Castillo grew up poor. His father worked in agriculture and his mother was a homemaker. He grew up with seven siblings in a small hut made of *yaguas* (dried royal palm trees), which in Puerto Rico is known as a *bohio*. His home did not have electricity, running water nor plumbing, only a latrine outside.

Life was difficult in the countryside, and his family faced financial hardships. Because of this, Mr. Castillo never went to school. PSR ¶49. He never

learned to read or write. In fact, he was compelled to work from a very young age in order to help support his family. PSR ¶51.

In 1989, Mr. Castillo immigrated to the United States for the first time. He settled in the mountain town of Adjuntas, PR, where he worked on the coffee farms. In 1998, he picked up a state criminal case and was subsequently allowed to voluntarily depart the U.S. He returned to the U.S. in 2010 but was arrested and deported that same year. Mr. Castillo remained in his home country until 2021, when circumstances forced him to return to the U.S.

Granted, Mr. Castillo did not want to return to the U.S. in 2021. He was 55 years old and had already settled down in his country. However, he found himself in dire financial straits. It was the height of the COVID-10 pandemic, and his country was hit hard. As a construction worker, Mr. Castillo was without work for months. Thus, he made the decision to return to the U.S. for better employment opportunities. He knew his presence in the U.S. was illegal, but he wants the Court to know that he only came back because of the financial strains he was experiencing.

Mr. Castillo is 60 years old now. Because of his age, he falls within the category of offenders who are less likely to reoffend. In addition, the Court should note that Mr. Castillo's only conviction dates to 1998 - nearly 28 years ago. Mr. Castillo is not a drug user, is non-violent and has dedicated his time in Puerto

Rico to working in construction. Also, he has five months of proven compliance with Court order pretrial release conditions.

### III.    Conclusion

The applicable guideline range in this case is from 0 to 6 months of imprisonment. PSR¶56. However, this is a case where "a sentence other than a sentence of imprisonment . . . is generally appropriate." Imprisoning Mr. Castillo at this time would do more harm than good for him and would not fulfill the goals of sentencing. Mr. Castillo is eager to get back to his country so that he can live out the rest of his days in peace.

A sentence of Time Served is appropriate in this case. It balances the need for punishment and deterrence with Mr. Castillo's personal background and circumstances. In addition, the Court should note the additional penalty that will be imposed on Mr. Castillo by way of his deportation and prohibition from reentering the United States. Therefore, considering all the § 3553(a) factors that apply in this case, Mr. Castillo respectfully requests that the Court sentence him to a sentence of Time-Served.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, April 16, 2026.

I HEREBY CERTIFY that on April 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

RACHEL BRILL

**FEDERAL PUBLIC DEFENDER**

S/JESÚS A. HERNÁNDEZ-GARCÍA
Assistant Federal Public Defender
USDC - PR 226812
241 F. D. Roosevelt Avenue
San Juan, PR  00918-2305
Tel.  (787) 281-4922
Jesus_Hernandez@fd.org